Judge Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff <br><br> v. <br><br> AMY SINISCARCO <br><br> Defendant. | NO. CR25-052 JNW <br><br> UNITED STATES SENTENCING MEMORANDUM |

## I.    INTRODUCTION

From at least 2013 through her termination in 2022, Defendant Amy Siniscarco abused the trust of her employer, a regional hardware retail and leasing business, by embezzling more than $1.4 million in company funds. This was not a single lapse of judgment but a years-long systematic and deliberate scheme in which Ms. Siniscarco forged and altered dozens of checks, used her employer's accounting system to initiate automated clearinghouse (ACH) payments, and made thousands of unauthorized personal purchases on company credit cards. She used the embezzled funds to pay her mortgage, purchase vehicles, fund her travel and leisure, pay her childcare and healthcare, pay her husband's IRS tax debt, and purchase securities. While Ms. Siniscarco lived above her means with stolen funds, her coworkers lost out on bonuses and profit sharing.

United States' Sentencing Memorandum - 1
*United States v. Amy Siniscarco*, CR25-052 JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Ms. Siniscarco appears before this court for sentencing in the above-captioned
2 case pursuant to her guilty plea on April 3, 2025, to Wire Fraud in violation of Title 18,
3 United States Code, Section 1343—which stems from her embezzlement of Victim
4 Company's funds—and Filing a False Tax Return, in violation of Title 26, United States
5 Code, Section 7206(1)—which reflects her failure to report those ill-gotten gains on her
6 tax returns. The United States respectfully recommends the Court (i) impose a custodial
7 sentence of 33 months, to be followed by a three-year term of supervised release;
8 (ii) order restitution to Victim Company, in the amount of $1,424,696.31, and to the
9 United States Treasury, in the amount of $226,826.00, with credit for any amounts
10 already paid; (iii) enter the proposed order of forfeiture; and (iv) order a mandatory fee of
11 $200.

## II.  OFFENSE CONDUCT

**A.  Ms. Siniscarco's Embezzlement from Victim Company**

14    From 2010 through August 2022, Ms. Siniscarco was employed by Victim
15 Company, a Bellingham, Washington, company involved in the sale and leasing of
16 construction equipment and hardware. Amended Presentence Investigation Report
17 ("PSR") ¶ 10. Ms. Siniscarco was eventually promoted to Assistant Office Manager for
18 Victim Company. *Id.* Ms. Siniscarco duties included, among other things, paying
19 invoices for Victim Company's business expenses and recording those transactions in
20 Victim Company's accounting system. *Id.* Victim Company trained Ms. Siniscarco with
21 the intention of having her eventually take over the role of office manager. *See* Victim
22 Statement of J.H.
23    Beginning no later than about February 2013, and continuing until her termination,
24 Ms. Siniscarco abused to trust Victim Company had placed in her by using her access to
25 Victim Company's finances to enrich herself by secretly transferring corporate funds to
26 her own accounts while creating the appearance that the funds were being used for
27 legitimate business expenses of Victim Company. PSR ¶¶ 11–12. She did this in several

United States' Sentencing Memorandum - 2
*United States v. Amy Siniscarco*, CR25-052 JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ways: by issuing fraudulent company checks to herself and to organizations whose financial accounts she controlled; by initiating unauthorized ACH payments to herself and on her behalf; by making unauthorized personal purchases on company credit cards; and by misappropriating the company's petty cash. *Id.* ¶¶ 13–17.

Ms. Siniscarco fraudulently wrote business checks from Victim Company's accounts to accounts she controlled. PSR ¶ 13. In some instances, Ms. Siniscarco had an employee of Victim Company with signing authority on Victim Company's accounts sign blank checks after falsely representing the intended recipient and/or intended purpose of the checks. *Id.* In other instances, Ms. Siniscarco forged the signature of Victim Company employees. *Id.* After obtaining or forging the requisite signatures, Ms. Siniscarco wrote a different payee than what was represented to Victim Company, including "Amy Scheib," Ms. Siniscarco's previous name from an earlier marriage; youth sports organizations for which Ms. Siniscarco served as treasurer; and "cash." *Id.* ¶ 14. Ms. Siniscarco concealed the true nature of the payments by including false descriptions of the payments on the checks' memo lines. *Id.* ¶ 15. Ms. Siniscarco also voided the checks on Victim Company's books and records. *Id.*

Ms. Siniscarco also utilized ACH payments to secretly transfer Victim Company's funds to herself. PSR ¶ 15. Ms. Siniscarco's duties at Victim Company included, without limitation, overseeing and performing ACH payments, credit card payments, tax payments for internet sales tax, and reconciling payments to Amazon. *Id.* Ms. Siniscarco abused her access to Victim Company's finances by initiating ACH payments from Victim Company to accounts she controlled, including, Ms. Siniscarco's personal checking account, her personal securities trading account, the mortgage servicer for her house, and the IRS, for payment of a tax debt owed by her husband. *Id.* Ms. Siniscarco concealed the true nature of the ACH payments she made to her personal accounts by labeling the payments in Victim Company's accounting software as "INET TAXES," referencing taxes ostensibly owed on internet-based sales. *Id.* Ms. Siniscarco was the

United States' Sentencing Memorandum - 3
*United States v. Amy Siniscarco*, CR25-052 JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

individual at Victim Company responsible for reconciling ACH transactions, so her fraud went undiscovered for some time. *Id.*

Next, Ms. Siniscarco made unauthorized personal purchases using Victim Company's credit cards. PSR ¶ 16. In her role as assistant office manager, Ms. Siniscarco handled all of Victim Company's credit cards, but she did not have a company credit card in her name. *Id.* Victim Company's manager instructed Ms. Siniscarco to cancel certain company credit cards, but instead of canceling the cards, Ms. Siniscarco utilized the cards to make unauthorized purchases for her personal benefit, including more than 1,800 unauthorized transactions on her personal Amazon account. *Id.* Ms. Siniscarco concealed the credit card statements from Victim Company by having the statements sent electronically only to Ms. Siniscarco's work email address. *Id.*

If all that were not enough, Ms. Siniscarco also took petty cash from Victim Company, which she attempted to conceal by writing fraudulent business checks to replenish the petty cash in amounts she had taken. PSR ¶ 17.

In all, from at least February 2013 through August 2022, Ms. Siniscarco secretly wrote at least 27 unauthorized checks, initiated at least 54 unauthorized ACH transactions, conducted at least 2,604 unauthorized credit card purchases, and took petty cash that collectively transferred at least $1,424,696.31 in Victim Company's funds and currency to herself or for her benefit. PSR ¶ 18.

**B.    Ms. Siniscarco's Fraudulent Tax Returns**

Ms. Siniscarco filed sworn tax returns for the years 2013 through 2022. PSR ¶ 20. The $1.4 million Ms. Siniscarco paid herself over that period was taxable income that she used for her own purposes. *Id.* However, Ms. Siniscarco omitted all of that income from her tax returns. *Id.* Accordingly, for each of the years from 2018 through 2022—the years within the statute of limitations at the time of charging—Ms. Siniscarco willfully filed false tax returns under penalty of perjury.  PSR ¶ 22.

United States' Sentencing Memorandum - 4
*United States v. Amy Siniscarco*, CR25-052 JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

For example, on about March 16, 2022, Ms. Siniscarco filed under penalty of perjury a tax return for the tax year 2021. PSR ¶ 21. Ms. Siniscarco reported on the tax return that her joint taxable income with her husband for the tax year totaled $131,718. *Id.* Ms. Siniscarco failed to disclose, however, that she had received an additional $269,270 in income—more than double the combined reported income of her and her husband—from her employer through the embezzlement scheme described above. *Id.* In all, Ms. Siniscarco failed to report $956,323 of income during the five-year chargeable period resulting in an additional $226,826 in tax due and owing. *Id.* ¶ 22.

## C.   The Criminal Charges

On April 3, 2025, Ms. Siniscarco entered pre-indictment guilty pleas to one count of wire fraud and one count of filing a false tax return. PSR ¶¶ 1–2.

### III.   SENTENCING GUIDELINES CALCULATIONS

The government agrees with the guideline calculation set out in the Presentence Report, which is as set forth below:

**Wire Fraud Calculation**

| Item | Guideline | Adjustment |
|---|---|---|
| Base offense level | 2B1.1(a)(1) | 7 |
| Intended loss in excess of $550,000 | 2B1.1(b)(1)(H) | 14 |
| Abuse of Trust | 3B1.3 | 2 |
| **Adjusted Offense Level (Subtotal)** | | **23** |

//
//
//

United States' Sentencing Memorandum - 5
United States v. Amy Siniscarco, CR25-052 JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Tax Fraud Calculation**

| Item | Guideline | Adjustment |
|---|---|---|
| Base offense level | 2T1.1 and 2T4.1H | 16 |
| Failure to report criminal proceeds | 2T1.1(b)(1) | 2 |
| **Adjusted Offense Level (Subtotal)** | | **18** |

Under USSG3D1.2, the Wire Fraud and Tax counts are separate groups. Under USSG3D1.4, there are 1.5 offense units, as the Tax group is 5 levels less serious than the Wire Fraud group. This results in a one-point increase, from 23 to 24. After acceptance, Ms. Siniscarco's offense level is 21. Additionally, the Presentence Report indicates that Ms. Siniscarco qualifies as a Zero-Point Offender under USSG §§4C1.1(a)(1)-(10). Although not agreed to in the plea agreement, the government does not object to the resulting two-point reduction. After factoring in the foregoing reductions, the total offense level is 19, resulting in a guidelines range of **30–37 months**.

### IV.  FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence the defendant to 33 months of confinement, followed by a 3-year term of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). A review of pertinent Section 3553(a) sentencing factors, below, supports the recommended sentence.

**A.  Nature and Circumstances, and Seriousness of the Offense**

This offense is aggravated in several respects. First, the offense is substantial in size, duration, and scope. Ms. Siniscarco stole over $1.4 million over nine and one-half

United States' Sentencing Memorandum - 6
United States v. Amy Siniscarco, CR25-052 JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

years, or an average of about $147,000 per year. She executed 2,685 fraudulent transactions—every one of which was a separate criminal act. On top of that, Ms. Siniscarco repeatedly prepared fraudulent accounting entries and invoices, which enabled her to cover up her theft and avoid detection for nearly a decade.

Second, the offense is aggravated because the defendant abused a position of trust. As Ms. Siniscarco well knew, Victim Company and its management and employees entrusted her with access to its corporate funds. In particular, Ms. Siniscarco had a longstanding and close relationship with Victim Company's office manager, whom Ms. Siniscarco was being trained to replace, with the expected transition scheduled to occur mere weeks after Ms. Siniscarco's fraud was discovered by the company's bank. PSR ¶¶ 25–28. Victim Company embraced a "family friends" workplace mentality, and Ms. Siniscarco took advantage of that trusting environment to enrich herself to the detriment of her colleagues. *Id.* According to Victim Company's president and owner, while Ms. Siniscarco was lining her pockets with embezzled funds, the company was forced to endure budget cuts and borrow at high interest to stay afloat. *Id.* Ms. Siniscarco's colleagues also lost bonuses and profit sharing. *Id.* The whole time, Ms. Siniscarco knew she was secretly stealing, placing the company's financial security—and her colleagues' jobs—at risk. When her fraud was finally discovered, Ms. Siniscarco instead placed blame on innocent coworkers, further degrading the trust the company had placed in her. *Id.* Ms. Siniscarco's breach of Victim Company's trust is a significant aggravating factor.

Third, Ms. Siniscarco's offense is aggravated by the significant scale of her tax fraud. After stealing millions of dollars from her employer, she lied to the IRS by wildly understating her income. For the tax return charged in Count 2, for example, Ms. Siniscarco claimed $131,718 in joint income with her husband, when in fact she had received more than double that amount—$269,270—in stolen funds. Ms. Siniscarco repeated this offense for nine different tax returns, seven of which were chargeable.

United States' Sentencing Memorandum - 7
*United States v. Amy Siniscarco*, CR25-052 JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.    History and Characteristics of the Defendant**

Ms. Siniscarco has no criminal history, and the sentencing guideline range fairly accounts for her lack of criminal history through the Zero-Point offender two-point reduction. Ms. Siniscarco's personal background and characteristics do not warrant a further reduction, however, and the government submits that 33 months of confinement, which falls squarely in the middle of the applicable range, holds Ms. Siniscarco accountable for her conduct.

At 2 out of 10, Ms. Siniscarco's Adverse Childhood Experiences score is low. PSR ¶ 81. Although she may find fault in some aspects of her upbringing and her previous marriage, it is hard to point to anything from Ms. Siniscarco's childhood or adult life that would have pushed her into the conduct at issue here. Rather, the conduct for which she is being sentenced appears to have been motivated by nothing other than greed. It was not a single weak moment influenced by past traumatic experiences, mental health, or substance abuse, but a systematic series of intentional decisions—thousands of decisions—to take money that was not hers, so she could live beyond her means at the expense of an employer and coworkers who placed their trust in her. It was greed that propelled Ms. Siniscarco to steal from her employer—and by extension, her coworkers—so she could spend hundreds of thousands of dollars on vehicles, mortgage payments, securities, Amazon purchases, travel and leisure, and other expenses. Accordingly, a 33-month sentence appropriately reflects Ms. Siniscarco's history and characteristics.

**C.    Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence**

Ms. Siniscarco demonstrated a complete disregard for the law when she embezzled more than $1.4 million from her employer over nearly a decade and hid that illicit income from the IRS. Although Ms. Sinsicarco paid a portion of the stolen funds back to Victim Company to settle a civil lawsuit, *see* PSR ¶ 5 n.2, Ms. Sinsicarco must be held accountable for her actions. Without accountability, there is little disincentive to

United States' Sentencing Memorandum - 8
*United States v. Amy Siniscarco*, CR25-052 JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

avoid similar conduct. A defendant could enjoy her unjust enrichment for years before getting caught and avoid significant consequences by simply giving back what remains from her fraud scheme once the game is up. A 33-month sentence is not only just punishment for Ms. Siniscarco's offenses; it also sends a clear message to others in the community that brazenly disregarding the law will cost them something far more valuable than money: their time.

### D. Need to Protect the Public from Further Crimes

Ms. Siniscarco appears to have been working without incident since her termination from Victim Company in August 2022. PSR ¶¶ 92–93. As such, she does not appear at risk of committing additional crimes or otherwise pose an immediate threat to the community. But absent a fair and just sentence, that calculus could change if the Court sends a message that theft and fraud—especially at the scale and to the degree exhibited here—will go without punishment.

### E. Kinds of Sentences Available, and Any Necessary Educational or Vocational Training or Other Special Care

The government is unaware of any necessary educational, vocational, or other special training/care needed. Nor does Ms. Siniscarco appear to qualify for any pre-trial diversion program. The Court should impose a 33-month sentence, which is squarely within the recommended range for offenses of this nature.

### F. Need to Avoid Unwarranted Sentence Disparity Among Similarly Situated Defendants

Finally, the government's 33-month recommendation would not create an unwarranted sentence disparity among similarly situated defendants. According to Judiciary Sentencing Information Data (JSIN), the average and median sentences for defendants with an offense level of 19 and a Criminal History Category of I are 22 and 24 months, respectively, which fall below the guidelines range. Ms. Siniscarco's conduct is hardly average for a defendant at her offense level, however. The length of her fraud

United States' Sentencing Memorandum - 9
*United States v. Amy Siniscarco*, CR25-052 JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

scheme, the number of conscious deceptive acts, the amount she stole from Victim Company, and the impact experienced by her victims do not support an "average" sentence. Rather, a sentence within the guidelines range is appropriate given the totality of circumstances and would not present an unwarranted sentence disparity.

The recommended sentence would also be consistent with recent embezzlement cases involving comparable loss in this district. *See United States v. Francis-Curley*, CR23-126-RSM (36-month sentence in $689,675 fraud case, including embezzlement from his employer of more than $550,000); *United States v. Hamrick*, CR20-709-RAJ (36-month sentence in $1.2 million fraud case, including 5-year scheme to embezzle more than $400,000 from employer to pay for home mortgage and luxury vacations); *United States v. Tantico*, CR23-82-JLR (41-month sentence for former finance director who embezzled more than $3 million from two different employers over a nine-year period and used the stolen funds to pay her mortgage, purchase vacations, and to finance her gambling losses); *United States v. Guillory*, CR23-77-RSM (36-month sentence where accounting manager embezzled more than $2.5 million from her employer over 10-year period and failed to report additional income on her tax returns). A 33-month sentence would be consistent with these comparable cases.

///
///
///

United States' Sentencing Memorandum - 10
*United States v. Amy Siniscarco*, CR25-052 JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. CONCLUSION

For all of the reasons set forth above, the government respectfully recommends that the Court (i) impose a custodial sentence of 33 months, to be followed by a three-year term of supervised release; (ii) order restitution to Victim Company, in the amount of $1,424,696.31, and to the United States Treasury, in the amount of $226,826.00, with credit for any amounts already paid; (iii) enter the proposed order of forfeiture; and (iv) order a mandatory fee of $200.

DATED this 30th day of October, 2025.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney

 s/ Jehiel I. Baer
JEHIEL I. BAER
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-4169
Fax: 206-553-6934
Email: Jehiel.Baer@usdoj.gov

United States' Sentencing Memorandum - 11
*United States v. Amy Siniscarco*, CR25-052 JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970